598 So.2d 1284 (1992)
Gaynell HARWELL
v.
HASPEL-KANSAS INVESTMENTS PARTNERSHIP, et al.
No. 91-CA-1968.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1992.
*1285 Steven B. Witman, Duplass, Witman, Zwain & Williams, Metairie, for defendants/appellees.
H. Edward Sherman, New Orleans, for plaintiff/appellant.
Before BARRY, LOBRANO and LANDRIEU, JJ.
LOBRANO, Judge.
Gaynell Harwell (Harwell) appeals a trial court judgment denying recovery in her personal injury action against Haspel-Kansas Investments Partnership (Haspel-Kansas).
On February 28, 1989, Harwell fractured her ankle while stepping down from a curb located in a parking lot owned by Haspel-Kansas. She filed the instant suit alleging that she slipped due to the degraded condition of the curb.
On the first day of trial, Harwell filed a Motion in Limine to strike defense witness Shelby Hampton. The motion was denied. At trial, it was undisputed that car bumpers had degraded the curb to a depth of 1 ¾ inches over a distance extending 3 inches back from the edge of the curb. It was also undisputed that there existed no type of warning as to the degradation. Photographs and a drawing of the curb were introduced into evidence. (Plaintiff's exhibits 8 & 9).
Harwell, along with her sister, Cheryl Vallecillo, and mother, Margery Massaro, testified as to the following scenario: While shopping for fabrics, Harwell, Vallecillo, and Massaro stopped at the shopping center located adjacent to the parking lot owned by Haspel-Kansas. After parking their car in front of Hampton's Flower Shop, they entered Metairie Fabric Shop, where they browsed for about an hour. On their way back to the car, Harwell allegedly slipped off the curb while attempting to enter the car. Harwell described the accident as follows:
"I stepped down, which I thought was the end of the curb, my foot was on it. Like my toes, as you walk into the curb and when I went and brought my foot forward, the next thing I was on the ground.
Counsel: Why did you fall?
Harwell: Because it was no finish edge or nothing anymore, it was gone, the curb was completely slicked and rounded off.
Counsel: Did your foot slip off of it?
Harwell: Absolutely."
Harwell fell to the ground and remained there, refusing help from her mother and sister. She eventually lifted herself up, *1286 got into the car, and was driven directly to Chalmette General Hospital. She was treated in the emergency room and released later that day. Harwell testified that she was unaware of the degradation of the curb, that she was not looking down at the curb when she fell, that the curb was not covered with any type of slippery substance, and that the accident occurred on a bright, sunny day.
Harwell introduced the testimony of Lawrence Reed, who was accepted as an expert in the field of architecture. Reed testified that he examined the curb on April 11, 1989, and determined that it presented an unreasonable risk of injury. Reed made a drawing of the degraded area which was introduced into evidence. Reed stated that he would never have designed a curb with a 1 ¾ inch slope, and that warnings would have helped alert pedestrians.
Haspel-Kansas introduced the testimony of John Pfeffer, who was accepted as an expert in civil engineering. Pfeffer testified that the curve was of acceptable height and construction. He stated that the degrading of the curve actually made it less slippery, and that a warning was unnecessary. In his opinion, the degraded curb was not a hidden trap, and could not be considered unreasonably dangerous. He also felt that resurfacing the degraded area was impossible because new concrete would not stick to the old surface.
Maurice Kansas, testifying on behalf of the individual members of the partnership, stated that the partnership knew about the condition of the curb. When asked why Haspel-Kansas had not purchased concrete bumpers to prevent curb degradation, Kansas said that the partnership had once placed concrete bumpers throughout the parking lot, but had removed most of them because they presented a tripping hazard to pedestrians. Kansas testified that he had not resurfaced the degraded area because he knew from personal experience that such repairs would separate from the old concrete and break apart, thereby causing further hazard.
Shelby Hampton, who owned two stores near the curb where Harwell was injured, testified that he was working in one of his stores when his mother-in-law informed him of Harwell's fall. Hampton walked outside and saw a woman, whom he could not identify as Harwell, being helped up from the pavement by two women. Hampton testified that the woman had fallen at a place where the curb was not degraded.
Pursuant to written interrogatories, the jury found that defendant's premises did not pose an unreasonable risk of harm and were therefore not defective. Harwell perfects this appeal asserting three errors.
First, she argues the court erred in failing to charge the jury on negligence, specifically the duty of a business owner to exercise reasonable care to protect its patrons. Second, she asserts that the jury erred in finding no defect. Third she complains that the court should have granted her motion in limine which sought to exclude the testimony of defense witness, Shelby Hampton.
ERROR NO. 1
The trial court charged the jury regarding the strict liability of a property owner for defects in his premises. Harwell complains that the court's failure to give a negligence charge did not let the jury evaluate whether "the owner, or person having custody of an immovable property has a duty to keep such property in a safe condition on his premises and either correct the condition or warn potential victims of its existence." We disagree.
The jury charge specifically provides that the owner of a premises which presents an unreasonable risk of harm is liable for the injuries caused by the defect. The charge further states that the owner's knowledge of the defect is imputed to him, and therefore if a defect is found it is assumed the owner had full knowledge of same. This is a correct statement of the law.
In cases such as this, negligence differs from strict liability only in that it imposes on the plaintiff the additional burden of proving that the defendant knew or should have known of an unreasonably dangerous condition. Kent v. Gulf State Utilities, 418 So.2d 493 (La.1982); Chatelain v. *1287 Project Square 221, 505 So.2d 177 (La.App. 4th Cir.1987), writ den. 508 So.2d 74 (La. 1987); Pope v. City of Baton Rouge, 449 So.2d 1070 (La.App. 1st Cir.1984); Lang v. Prince, 447 So.2d 1112 (La.App. 1st Cir. 1984), writ den. 450 So.2d 1309, 1311 (La. 1984). Thus, the only additional element that a negligence charge would have required was the knowledge of the defect by the defendant.[1] However, since knowledge is presumed when a defective condition is found, it was not necessary for plaintiff to prove this element, hence no need to give the charge. In addition, the defendant admitted knowing of the curb degradation. We find the negligence charge would have been superfluous and no error in the court's failing to give same.
We also find no error in the absence of any specific charge regarding a business owner's duty to keep his premises safe for invitees. We fail to see how consideration of a charge of that nature would have influenced the jury's conclusion that the premises was not defective. The additional charge would have been irrelevant, and its absence is not prejudicial.
ERROR NO. 2
The jury found that the curb on which Harwell fell was not defective. Harwell argues that this finding, as well as the jury's conclusion that the curb was not a cause-in-fact of the injury, are clearly wrong.
The jury "cause-in-fact" conclusion is naturally predicated on their finding that the curb was not defective. Harwell asserts that the court's charge "was a mechanical application of the strict liability test as opposed to the mandated, `the circumstances of each case' consideration which was not charged." In condensed form, her argument is that the court erred in not emphasizing for the jury the different meanings a defect takes on in terms of the relative expectations of a person walking on a public sidewalk.
The jury's determination that the premises were not defective is based on their evaluations of the expert and lay testimony outlined above. After review of the testimony we cannot say that their determination was clearly wrong. Furthermore, we have reviewed the jury charges in their entirety and conclude they were proper. They adequately defined what constitutes a defect and the landowner's responsibility for injury. Harwell's complaints concerning the lack of emphasis on the duty of a business owner to his invitees are without merit. We are not convinced that any further charges would have influenced the jury's finding that the curb was not defective. We find no prejudice by the absence of the additional charges.
ERROR NO. 3
Finally, Harwell argues that the trial court abused its discretion in refusing to grant plaintiff's Motion in Limine to strike defense witness Shelby Hampton. Although Haspel-Kansas was required to file its witness list on October 15, 1990, it did not list Hampton until December 13, 1990, two days prior to the discovery deadline. Harwell alleges that the late addition of Hampton, together with defendants failure to provide his address, made it impossible to schedule Hampton's deposition, and that he was therefore a surprise witness.
A reviewing court must defer to a trial judge's reasonable decision on a question or matter properly within his discretion. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983); Paul v. Murray, 488 So.2d 768 (La.App. 3rd Cir.1986); Succession of Crain, 450 So.2d 1372 (La.App. 1st Cir. 1984); Rourke v. Coursey, 338 So.2d 1197 (La.App. 3rd Cir.1976). In matters of discovery, such as whether a witness has been listed in a timely manner, decisions of the trial court should not be disturbed in the absence of an abuse of discretion. John Jay Esthetic Salon, Inc. v. Woods, 422 So.2d 456 (La.App. 5th Cir.1982), appeal after remand 435 So.2d 1051 (La.App. 5th Cir.1983), writ den. 439 So.2d 1073 (La. *1288 1983); Franklin v. Harvill, 406 So.2d 696 (La.App. 2nd Cir.1981).
We do not find an abuse of discretion. Harwell had three weeks to take Hampton's deposition, or, alternatively to file a motion to strike. As the motion to strike was not filed until the first day of trial, we will not question the trial judge's discretion on this matter.
Furthermore, we have reviewed Hampton's testimony and find that it was probative of where the accident occurred. It bears on the issue of whether the curb was a cause-in-fact of the injury and not the threshold issue of whether it was defective. In our opinion it had little, if any, effect on the jury's verdict.
Accordingly, for the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The court's charges specifically state that "it makes no difference if the owners knew or did not know of the defect."